# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEDICATED LOGISTICS, INC., | ) |
| Cross Claimant /Counterclaim Defendant, | ) ) ) |
| v. | ) ) Civil Action No. 11-1153 |
| PENNSYLVANIA POWER COMPANY, | ) Hon. Nora Barry Fischer ) ) |
| Cross Claimant / Counterclaimant. | ) |

## ORDER OF COURT

AND NOW, this 21st day of May, 2015, upon consideration of Penn Power's Motion in Limine to Preclude Pole "Rot" Assertion, (Docket No. [140]), its Brief in Support and attachments (Docket No. [141]), and Dedicated's Brief in Opposition and attachments, (Docket No. [176]),

IT IS HEREBY ORDERED that Penn Power's Motion [140] is GRANTED. In so holding, the Court notes that pursuant to Rule 401, courts are instructed generally to admit all evidence having "any tendency" to make the existence of a material fact "more probable or less probable than it would be without the evidence." FED. R. EVID. 401; *United States v. Friedman*, 658 F.3d 342, 355 (3d Cir. 2011); *Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532 (3d Cir. 2007) (quoting *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir.2004) ("The definition of relevant evidence is very broad and does not raise a high standard.")). The Court is tasked with a gatekeeper role requiring it to evaluate expert opinion evidence prior to admission to ensure that such evidence meets each of the Rule 702 requirements of "qualifications" "reliability" and "fit." The "fit" element is at issue here and the proponent of the evidence (i.e., Dedicated) must demonstrate that "such evidence 'speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury.'" *United States v. Ford*, 481

1

F.3d 215, 219, n.6 (3d Cir. 2007); *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact."). However, relevant evidence, expert or otherwise, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403; *see Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 386 F. App'x 214, 218 (3d Cir. 2010) ("A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules.").

This Court previously addressed the parties' cross motions for sanctions outlining the problems with the preservation of the pole (which was destroyed by Penn Power) and the truck (which was put back into service by Dedicated without permitting it to be inspected). (Docket No. 104). In that decision, the Court denied spoliation sanctions, including the requested adverse inferences at trial, because the Court found no evidence of bad faith by either party. (*Id.*). At the same time, the Court specifically noted the negligence of both parties in maintaining and preserving what should have been seen by the parties as necessary evidence in this case. (*Id.*). Ultimately, it is pox on both of the parties' houses for their respective preservation failures as well as their untimely requests for preservation but these are not case dispositive issues or disputes that this jury must resolve. Instead, the question at trial becomes, beyond the mere undisputed fact that the pole was destroyed and not available for the experts to physically examine it, how is any of this alleged "rotten pole" evidence relevant?

At most, the "rotten pole" evidence is very weak, marginally relevant and the Court generally agrees with Penn Power's assessment that it is a "red herring." Haberkorn never went

2

to the scene. The picture he looked at shows some discoloration and chipped paint, at most. *Supplemental Report 5/30/13 at Figure 1*. McDermott admitted that he could not get close enough to see if there was "rot" or do anything with it like placing a pin in it. The expert witness, Dunn, opines that "this failure of the utility pole very likely occurred because the strength of the 40-year-old pole at ground level had been significantly degraded by wood deterioration (rot)" but at the same time admits that "[u]nfortunately, since the pole was not retained by Pennsylvania Power and was disposed of prior to any forensic inspection, **the physical presence of rot could not be proven**." *Supplemental Report 5/30/13* at 11 (emphasis added).

As the Court continues to point out, the jury issue regarding the accident on May 19, 2011 is whether the truck first hit the guy wire or the low hanging wires. Indeed, the parties have stipulated that their respective positions in this case are the following. "Dedicated contends that Penn Power's wires were too low which allowed the lowest wire to be caught by Dedicated's trailer as it passed underneath the wire to exit the parking lot. Penn Power contends that the overhead wires were not too low and that the accident was caused by Dedicated's driver, Earnell Harris striking Penn Power's guy wire, which caused the pole to lower allowing the overhead wire to come into contact with the trailer." (Docket No. 181).

Dedicated has not specifically pled an alternative theory that the nature of the "rotten pole" was a contributing cause of the accident.[1] (Docket No. 36). Stated in other words, Dedicated has not pled that if its truck hit the guy wire first as Penn Power's experts opine, that

---

[1] At most, Dedicated "asserts as a complete and/or partial bar to [Universal's] claims, the failure of third party entities and/or [Universal] to properly inspect, maintain, or otherwise monitor the subject overhead wires, transformer and utility poles to ensure their compliance with all applicable safety and building codes, municipal ordinances and Pennsylvania laws and regulations" which it incorporates into its cross claim against Penn Power but, Dedicated never points to any specific code, law, ordinance or regulation which the alleged structurally deficient pole violated. (Docket No. 36).

3

the structural integrity of the pole was the proximate cause of the accident or even a contributing factor. (*Id.*). At most, Dedicated's expert, Dunn, opines that the structural integrity of the pole was compromised based on his review of pictures of the pole (which, again, was destroyed) and the testimony of individuals that observed the pole on the scene from a distance. The expert report notes (and the expert witness testified) that principles of mathematics and physics were utilized to determine the force the truck applied to the pole and the amount of force that the pole was able to withstand. *See Supplemental Report 5/30/13*. But, there is no guiding standard presented by Dedicated or its experts setting the amount of force that a utility pole must be able to absorb from the pull on its wires caused by a truck colliding with them. They also do not offer an opinion that a pole with greater structural integrity meeting such unspecified standard would have withstood the actual force which was applied by the truck colliding with the wires on April 19, 2011. (*See* Docket No. 115 ("Dr. Dunn will also testify that based upon mathematical analysis, the subject utility pole was rotted and its strength was compromised.")); Docket No. 176-1, *Supplemental Expert Report dated 5/30/13* ("Conclusions. The strength of the subject utility pole was compromised due to rotting near the base of the pole.")). Aside from speculative presumptions arising from weak inferences of fact deduced from largely unhelpful witness testimony, neither Dedicated nor its experts have proven that the alleged structural deficiency of the pole was a contributing factor to the proximate causation of the accident.[2]

Hence, the expert evidence regarding the "pole rot" and structural integrity of the pole does not "fit" this case and such expert testimony is speculative, at best. *See Ford*, 481 F.3d at 219, n.6; *Schneider*, 320 F.3d at 404. Further, expert opinions based on such flimsy testimony will mislead the jury which may give greater credence to this "rot" theory than the actual

---

[2] The Court finds it striking that it has not been presented with deposition testimony of the third party that routinely inspected Penn Power's poles.

evidence permits due to the fact that it is presented through this expert witness. *See Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 682 (3d Cir.1991) ("It is also true that a verdict may not be based on speculation, whether the testimony comes from the mouth of a lay witness or an expert.") (internal citation and quotations omitted); *Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pennsylvania*, 745 F.2d 248, 262 (3d Cir.1984) ("[T]he factual predicate of an expert's opinion must find some support in the record."). Accordingly, such evidence must be excluded under Rule 702 because it does not "fit" the case and Rule 403 as such evidence is substantially outweighed by the danger of unfair prejudice, and potential to mislead the jury. *Id.*

Similarly, the lay testimony concerning the alleged pole rot is likewise speculative and must be excluded under Rule 403 for the same reasons. As to lay testimony concerning the destruction of the pole, there is simply no need to call multiple witnesses on this simple point. Hence, duplicative testimony will be excluded to the extent that it becomes cumulative. *See* Fed. R. Evid. 403.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

cc/ecf: All counsel of record.